UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| DEMETRICE BARNES, )<br>      Plaintiff, )<br>)<br>      v. )<br>)<br>ANDREW SAUL, )<br>Commissioner of the )<br>Social Security Administration, )<br>      Defendant. ) | CAUSE NO.: 2:18-CV-249-JEM |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Demetrice Barnes on June 29, 2018, and Plaintiff's Opening Brief [DE 18], filed March 18, 2019. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On May 24, 2019, the Commissioner filed a response, and Plaintiff filed a reply on June 19, 2019.

**I.  Background**

On April 15, 2014, Plaintiff filed an application for benefits alleging that she became disabled on October 30, 2009. Plaintiff's application was denied initially and upon consideration. On December 13, 2016, Administrative Law Judge ("ALJ") William Sampson held a hearing, at which Plaintiff, along with an attorney and a vocational expert ("VE"), testified. On June 1, 2017, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2014.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of October 30, 2009 through her date

1

last insured of December 31, 2014.

3. The claimant has the following severe impairments: valvular heart disease, hypertension, degenerative disc disease, right total knee replacement and obesity.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

5. Through the date last insured, the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), as the claimant was able to lift and/or carry 10 pounds occasionally, sit for six hours in an eight hour weekday and stand and/or walk for two hours in an eight hour workday, except: the claimant required the use of a cane for assistance with balance when standing or walking, was unable to climb ladders, ropes or scaffolds, kneel, crouch or crawl, could occasionally climb ramps and stairs, balance and stoop and could frequently but not constantly handle, finger and feel bilaterally.

6. Through the date last insured, the claimant was capable of performing past relevant work as a receptionist.

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 30, 2009, the alleged onset date, through December 31, 2014, the date last insured.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. [DE 16]. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**II.    Standard of Review**

The Social Security Act authorizes judicial review of the final decision of the agency and

indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010) (*O'Connor-Spinner I*); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*,

55 F.3d 300, 307 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## III. Analysis

Plaintiff argues that the ALJ failed to properly evaluate her mental limitations, failed to adequately justify his conclusions in the RFC, and failed to consider Plaintiff's obesity and other impairments in combination. The Commissioner argues that the decision is supported by substantial evidence.

First, Plaintiff asserts that the ALJ erred by failing to account for her "mild" mental limitations in the RFC. The RFC is an assessment of what work-related activities the claimant can perform despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). According to SSA regulations:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must

> also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Although an ALJ is not required to discuss every piece of evidence, he must consider all of the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review. *Clifford,* 227 F.3d at 874; *Young,* 362 F.3d at 1002.

At step two, the ALJ assessed four areas of mental functioning and found that Plaintiff had a mild limitation in understanding, remembering or applying information; mild limitation in interacting with others; mild limitation in concentrating, persisting, or maintaining pace; and mild limitation in adapting or managing oneself. AR 13-14. The ALJ included these impairments in one of his hypotheticals to the VE, but did not address them in the RFC. Plaintiff argues that this omission requires remand.

Although a claimant's individual impairments in isolation may not limit work, the ALJ is required to consider the effect of the impairments in combination. *See Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) ("A failure to fully consider the impact of non-severe impairments requires reversal."); *Villano*, 556 F.3d at 563 ("[T]he ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe."). Even though the ALJ found that Plaintiff's limitations were mild and non-severe, he was still required to consider them in the RFC, particularly because the jobs he recommended for Plaintiff demanded "skilled" or "semi-skilled" work. *See, e.g., Cheryl C. v. Berryhill,* No. 18 C 1443, 2019 WL 339514, at *3 (N.D. Ill. Jan. 28, 2019) ("[T]he inclusion of even mild limitations in social functioning or concentration, persistence, or pace may preclude the ability to perform [. . .] skilled and semi-skilled work."); *Simon-Leveque v. Colvin*, 229 F. Supp. 3d 778, 787 (N.D. Ill. 2017) ("While

a mild, or even a moderate, limitation in an area of mental functioning does not necessarily prevent an individual from securing gainful employment . . . the ALJ must still affirmatively evaluate the effect such mild limitations have on the claimant's RFC."); *Dross-Swart v. Astrue*, 872 F. Supp. 2d 780, 795 (N.D. Ind. 2012) ("[T]he ALJ was incorrect to exclude the effect of Dross–Swart's mild mental limitations from her analysis.").

Next, Plaintiff asserts that the ALJ failed to account for her manipulative abilities in the RFC. Plaintiff alleges that she was limited in her manipulation due to de Quervain's tenosynovitis. The ALJ found that Plaintiff could "frequently but not constantly" handle, finger, and feel bilaterally, but did not adequately explain that conclusion. First, the ALJ did not analyze Plaintiff's own testimony in assessing her manipulative abilities. Plaintiff testified that she was limited in repetitive activities (AR 49), and struggled to dress and tie her shoes, wash her teeth, brush her hair, and open jars (AR 51, 57). Although the ALJ mentioned some of this evidence at step two, in addressing Plaintiff's mental limitations, he did not appear to consider it in the context of gripping or handling. The ALJ was required to "evaluate whether [those] statements are consistent with objective medical evidence and the other evidence," and "explain" which symptoms were found to be consistent or inconsistent with the evidence. SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016), at *6, *8. He did not do so.

The Commissioner argues that Plaintiff's testimony referred to her condition at the time of the hearing in December 2016, rather than the time she was insured, which ended in December 2014. But the Commissioner cannot rely on an argument the ALJ did not articulate in the decision. *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (discussing *Chenery* doctrine, i.e., an agency's lawyers may not defend its decision on grounds not supplied in the decision); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) ("[A]n ALJ must articulate in a rational manner the

reasons for his assessment of a claimant's residual functional capacity, and in reviewing that determination a court must confine itself to the reasons supplied by the ALJ."). Moreover, although many of the questions and answers were phrased in the present tense, there is no direct indication that the testimony did not relate to 2014. Plaintiff testified that she was diagnosed with de Quervain's in 2012. AR 57. She began treatment for it in February 2014 at the latest. *See* AR 879 (treatment note from 2014), 880 (treating physician wrote in 2016 that he saw Plaintiff "over 3 years ago for de Quervain's").

There was objective evidence of Plaintiff's limitations in the record. At a consultative examination in July 2014, Plaintiff's grip strength was measured with a dynamometer at 17.8 kg (39.2 pounds) of force in the left hand (AR 657), well below average for her age. *See Herrmann v. Colvin*, 772 F.3d 1110, 1112 (7th Cir. 2014) (citing Virgil Mathiowetz et al., "Grip and Pinch Strength: Normative Data for Adults," 66 *Archives of Physical Medicine and Rehabilitation*, 69, 71 (1985) (study documenting an average grip strength for women aged 45-49 of 62.2 pounds with the right hand with a standard deviation of 15.1 pounds, and 56.0 pounds with the left hand with a standard deviation of 12.7 pounds) (available at https://www.ncbi.nlm.nih.gov/pubmed/3970660). Although this same consultative examination found "full grip strength and dexterity bilaterally," it did not appear to address Plaintiff's complaints of fatigue and pain with repeated activities. *See, e.g.*, AR 58 (Plaintiff testified that she could type "[g]enerally maybe about 45 minutes before I start feeling discomfort in my hands and then I just kind of let it go."); *see also* SSR 96-8p, 1996 WL 374184, at *7 ("In assessing RFC, the adjudicator must discuss the individual's ability to perform . . . on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule)."). Ultimately, the ALJ did not appear to consider all of the relevant evidence in the record, and did not adequately

explain how he arrived at his conclusion that Plaintiff was capable of "frequent" handling and fingering. *O'Connor-Spinner*, 627 F.3d at 618 (an ALJ "must provide a 'logical bridge' between the evidence and his conclusions.").

Finally, Plaintiff contends that the ALJ failed to consider her obesity in combination with her other impairments. Plaintiff states that the ALJ should have discussed the impact Plaintiff's obesity would have on her degenerative disc disease and chronic knee issues. The ALJ mentioned Plaintiff's obesity once in the RFC discussion, stating she could perform sedentary work "due to a history of valvular heart disease, hypertension, degenerative disc disease, right total knee replacement and obesity." AR 20.

An ALJ must consider the exacerbating effects of a claimant's obesity on her other conditions when arriving at the RFC assessment. *Clifford*, 227 F.3d at 873 (remanding where the ALJ "should have considered the weight issue with the aggregate effect of [claimant's] other impairments"); *see also Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might be disabling."). In this case, the ALJ found at step two that Plaintiff's obesity was a severe impairment, but there was no analysis or explanation as to whether or how the obesity exacerbated her spine or knee impairments. *See Martinez*, 630 F.3d at 698-99 ("It is one thing to have a bad knee; it is another thing to have a bad knee supporting a body mass index in excess of 40."); *Barrett*, 355 F.3d at 1068 ("Maybe the administrative law judge thought that since he had already ruled that Barrett's obesity was a severe impairment of her ability to work, though not totally disabling in itself, [. . .] conditions caused or aggravated by obesity were irrelevant. That of course would be wrong. The problem is that we don't know what he thought.").

On remand, the ALJ is directed to fully consider each of Plaintiff's alleged impairments,

alone and in combination, and provide a logical bridge from the evidence to his conclusion. In addition, the ALJ is reminded that Plaintiff's subjective complaints must be considered in the manner required by SSR 16-3p, including her complaints of pain, daily activities, need to lie down or take breaks, and treatment methods. SSR 16-3p, 2017 WL 5180304 at *7-8 (listing the factors to consider).

**IV.     Conclusion**

For the foregoing reasons, the Court hereby GRANTS the relief requested in the Plaintiff's Opening Brief [DE 18], and REMANDS this matter for further proceedings consistent with this opinion.

SO ORDERED this 3rd day of March, 2020.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:   All counsel of record